UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY HUNT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-CV-0099 PLC |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Kimberly Hunt seeks review of the decision of Defendant Social Security Acting Commissioner Kilolo Kijakazi denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. For the reasons set forth below, the Court affirms the Commissioner's decision.

I.    **Background and Procedural History**

On September 3, 2019, Plaintiff who was born in August 1977, filed an application for SSI,[1] alleging she was disabled as of September 3, 2019,[2] as a result of "blind or low vision," high blood pressure, chronic obstructive pulmonary disease, anxiety, panic attacks, seizures, chronic major depression, bipolar disorder, suicide attempts, and post-traumatic stress disorder (PTSD). (Tr.  93-107, 230-235)

The Social Security Administration (SSA) denied Plaintiff's claim, and she filed a timely request for a hearing before an administrative law judge (ALJ).  (Tr. 93-107, 131-135, 137-38)

---

[1] Plaintiff also filed an application for Disability Insurance Benefits under Title II of the Act but withdrew her request for a hearing before the ALJ after the Social Security Administration's initial denial of benefits.  (Tr.  108-119, 125-129, 228-229)

[2] Plaintiff's initial application for benefits alleged a disability onset date of May 1, 2012, however, she subsequently amended that date to September 3, 2019. (Tr.  93-107, 230-235, 41-42)

The SSA granted Plaintiff's request for review and conducted a hearing on March 22, 2021. (Tr. 36-69)  On June 2, 2021, the ALJ issued a decision finding Plaintiff not disabled. (Tr.  11-35) Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 1-7, 225-227)  Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision.  Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II.     Evidence Before the ALJ[3]

### A.  Plaintiff's Testimony

At the March 22, 2012 hearing, Plaintiff was 43 years old and lived with her parents and uncle. (Tr. 43-44, 57) Plaintiff has bipolar, major depressive disorder, anxiety disorder, and PTSD. (Tr.  48) Plaintiff's depression and anxiety affect her on a day-to-day basis. (Tr. 50-51) Plaintiff is "chronically" depressed and testified that "[s]ometimes I sit and cry, depressed with how everything went with my sons not being at home…[and] with their father." (Tr. 46, 50-51)  Anxiety affects Plaintiff "just about every day" in that she is "real anxious all the time, like I am not doing something right or I can't do this because of this[.]" (Tr.  51) Plaintiff experiences panic attacks "just about every day" which can be caused by "anything[.]"  (Tr.  52-53)  Plaintiff described a "good day" as one where she "is not panicking" and a "bad day" as one where she spends the day crying and praying. (Tr.  52) Plaintiff "sometimes" has a good day "but not often." (Tr.  52)

Plaintiff testified she is "very forgetful" and has difficulty concentrating and focusing, stating "I can try to read something. I try to read the Bible and I can't understand what I just read." (Tr.  46, 51) Plaintiff "sometimes" has difficulty being around people and does not like to be

---

[3] Plaintiff challenges the ALJ's evaluation of the evidence related to her mental impairments. [ECF No. 10] Because Plaintiff does not challenge the ALJ's determinations regarding her physical impairments, the Court limits its discussion of the evidence related to Plaintiff's mental impairments.

around "a bunch of people[.]" (Tr.  51-52) Plaintiff "usually just stay[s] to [herself]" and does not interact with others. (Tr.  52)

B.  Function Report

In a function report dated October 5, 2019, Plaintiff reported her typical day involved getting out of bed, taking her medication, eating, using the bathroom, and watching television before going to bed. (Tr.  270) Plaintiff needs reminders to wake up, take her medications, and go to doctor's appointments. (Tr.  271) Plaintiff performs no household chores and her uncle or mother prepare her meals and do her laundry. (Tr.  270-271) Plaintiff goes outside once or twice a day and shops once or twice a week.  (Tr.  272)  Plaintiff pays bills, handles a savings account, and counts change. (Tr.  272) Plaintiff uses a checkbook but is a "little slower than usual" and double checks her work or has her family check it for her. (Tr.  272) Plaintiff watches television for 30 to 60 minutes at a time and reads depending on "if [she] can get into it[.]" (Tr.  273) Plaintiff is able to pay attention for 1 to 5 minutes at a time but fails to finish what she starts. (Tr.  274) Plaintiff stated it was "a real challenge" for her to follow written instructions, and that "most" of the time she has someone repeat spoken instructions. (Tr.  274) Plaintiff interacts with her parents and family but only gets along with her mother. (Tr.  273-74) Plaintiff stays at home unless she is going shopping. (Tr.  273-74)

C.  Medical Opinion Evidence

Plaintiff submitted the medical opinions of LaDonna Williams, a Psychiatric Mental Health Nurse Practitioner, and Lara Huffman, M.D., in support of her claim.[4] On May 1, 2020, Ms.

---

[4] The record also includes the medical opinion of the State agency psychological consultant Linda Skolnick, Psy. D. (Tr.  99-105) The ALJ found Dr. Skolnick's opinion to be partially persuasive in rendering her opinion. (Tr.  27) Plaintiff does not challenge the ALJ's evaluation of Dr. Skolnick's opinion. [ECF No. 10]

3

Williams provided her medical opinion,[5] completed on a pre-printed check box form, opining Plaintiff would miss 4 days of work per month and be off-task 25% or more in a workday. (Tr. 685)  Ms. Williams stated Plaintiff experienced drowsiness and lack of focus as side effects of her medications. (Tr. 685)  Ms. Williams found Plaintiff had marked or extreme limitations in mental functioning related to understanding and memory, concentration and persistence, social interaction, and adaptation. (Tr. 685-686) This included limitations in her ability to understand, remember, and carry out very short and simple instructions; the ability to ask simple questions or request assistance; and the ability to maintain socially appropriate behavior and adhere to basic standard of neatness and cleanliness. (Tr. 685-686)  The form included a pre-printed list of potential factors from which the provider could choose to support his or her medical opinion.[6]  Ms. Williams circled the factors "Clinical findings;" "Diagnosis;" and "Treatment prescribed with response, and prognosis" on the form but did not provide a narrative explanation.  (Tr. 686)

Dr. Huffman's opinion, dated February 23, 2021, was also completed on a pre-printed form. (Tr. 1102-1103) Dr. Huffman found Plaintiff experienced drowsiness, dizziness, and lack of focus as a result of her medications. (Tr. 1102) Dr. Huffman concluded Plaintiff would miss approximately 4 days of work per month and would be off-task 25% or more of the day. (Tr. 1102)

---

[5] Plaintiff submitted two medical opinions from Ms. Williams, one dated October 8, 2019 and the other dated May 1, 2020. (Tr. 450, 685) The two medical opinions are substantially similar, with the notable exception that Ms. Williams found Plaintiff experienced greater limitations in her mental functioning in the second opinion. (Tr. 450-452, 685-686) Both opinions utilized the same pre-printed form and did not include a narrative explanation supporting the assessment. (Tr. 450-452, 685-687) Although the ALJ found both of Ms. Williams' opinions to be unpersuasive for identical reasons, Plaintiff does not challenge the ALJ's finding as to Ms. Williams' October 2019 opinion. [ECF No. 10] Accordingly, the Court limits its discussion to the ALJ's consideration of Ms. Williams' May 2020 opinion.
[6] This section states as follows:
Based on the following factors: (Please Circle)
(1) Medical history;
(2) Clinical findings (such as the result of physical or mental status examinations);
(3) Laboratory findings (such as blood pressure, x-rays);
(4) Diagnosis (statement of disease or injury based on its signs and symptoms);
(5) Treatment prescribed with response, and prognosis[.]

Dr. Huffman found Plaintiff exhibited mild to extreme limitations in mental functioning, including marked limitations in her ability to maintain attention and concentration for extended periods and to sustain an ordinary routine without special supervision, and extreme limitations in her ability to interact with co-workers or peers without distracting them or exhibiting extreme behaviors. (Tr. 1102-1103) Dr. Huffman did not provide a narrative explanation in support of her opinion but instead circled the following pre-printed factors: medical history, clinical findings, diagnosis, and treatment. (Tr. 1103).

     D.  <u>Vocational Expert's Testimony</u>

     Vocational expert John Dolan testified at the hearing. (Tr. 58) The ALJ asked Mr. Dolan to consider a hypothetical individual with Plaintiff's age, education, and work experience who is able to perform light work with the following limitations:

> Occasionally climb ropes, ladders, scaffolds, ramps and stairs, occasionally balance…, stoop, kneel, crouch and crawl, avoid concentrated exposure to vibrations and hazards, and then also limited to simple and routine tasks with occasional interaction with coworkers, supervisors and no interaction with the public[.]

(Tr. 68)

     Mr. Dolan concluded that such an individual could perform jobs such as mailroom clerk, cafeteria attendant, and housekeeping cleaner. (Tr. 60) The ALJ modified the hypothetical to include that the individual was:

> …able to learn, remember and carry out or complete simple, routine tasks in a timely manner at an appropriate pace, able to use reasonable judgment to make simple, routine, work related decisions, able to adapt to gradual changes in the job setting and job duties, able to sustain an ordinary routine and attendance without special supervision, able to complete a work day with normal breaks in the schedule, lengths and number of breaks, able to work in proximity to others without… interrupting or districting them…while performing simple and routine tasks, limited to jobs not involving tandem tasks…limited to no direct interaction with the public[,] casual and infrequent interaction with coworkers and…occasional interaction with supervisors[.]

(Tr.  62, 65) Mr. Dolan testified the individual would be able to perform the cited jobs.  (Tr.  65)

       E.   Medical Records

In regard to Plaintiff's medical records, the Court adopts the facts that the Commissioner admitted and that Plaintiff set forth in her statement of material facts. [ECF Nos. 10-1, 11-1] The Court also adopts the additional facts contained in the Commissioner's response to Plaintiff's statement of material facts because Plaintiff admitted them.[7]  [ECF Nos. 11-1, 12-1].

**III.**     **Standards for Determining Disability Under the Social Security Act**

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1); 42 U.S.C. §1381a.  The Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than twelve months." 42 U.S.C. § 1382c (a)(3)(A); See also 20 C.F.R. § 416.905(a).  The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...."  42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the ALJ engages in a five-step evaluation process.  See 20 C.F.R. § 416.920(a).  Those steps require a claimant to first show that he or she is not engaged in substantial gainful activity.  Id.  Second, the claimant must establish that he or she has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities."  20 C.F.R.

---

[7] Relevant medical records are discussed in detail below.

6

§ 416.920(a), (c).  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [the claimant's] ability to work."  Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)). At step three, the ALJ considers whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R., Pt. 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a), (d). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920 (d), (e).

Prior to step four, the Commissioner must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations."  Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. 404.1545(a)(1)); see also 20 C.F.R. §§ 416.920(e), 416.945(a)(1).  RFC is "based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations."  Id. (quoting Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006)).

At step four, the ALJ determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  20 C.F.R. § 416.920(a), (f); see McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, the claimant will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step.  McCoy, 648 F.3d at 611; 20 C.F.R. § 416.920(f).

Through step four, the burden remains with the claimant to prove that he or she is disabled. Moore, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other

jobs in the national economy that the claimant can perform. 20 C.F.R §§ 416.920(a), (g); 416.960(c); Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). If the claimant cannot make an adjustment to other work, then he or she will be found to be disabled.  20 C.F.R. § 416.920(g).

## IV.    ALJ's Decision

Applying the five-step evaluation process, the ALJ found Plaintiff: (1) had not engaged in substantial gainful activity since September 3, 2019, the onset date; and (2) had the severe impairments of degenerative disc disease of the lumbar and cervical regions of the spine, osteoarthritis of the right hip, obesity, affective disorder (variously diagnosed as major depressive disorder and bipolar disorder), anxiety disorder, and personality disorder. (Tr. 16)  The ALJ concluded Plaintiff had the non-severe impairments of hyperlipidemia, hypertension, gastroesophageal reflux disease, vitamin D deficiency, a pulmonary vascular disorder, visual impairment, fracture of the right ankle, and fracture of the right wrist. (Tr.  16).

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr.  18) The ALJ determined Plaintiff had the RFC to perform light work as defined in 20 CFR 416.967(b) with additional exertional limitations and the following non-exertional limitations:

> She is able to learn, remember, and carry out or complete simple, routine tasks in a timely manner and at an appropriate pace. She is able to use reason and judgment to make simple, routine work-related decisions. She is able to adapt to gradual changes in a job setting and job duties. She is able to sustain an ordinary routine and attendance without special supervision, including completing a workday with normal length and number of breaks. She is able to work in close proximity to or with others without interrupting or distracting them, and without being interrupted or distracted by them, while performing simple, routine tasks. She is limited to jobs not involving tandem tasks (such as assembly line work) or adversarial actions (such as customer complaints). She is limited to no direct interaction with the public (the public may be present, but job tasks do not require interaction), casual and

8

infrequent interaction with co-workers and, after the initial training and/or probationary period, occasional interaction with supervisors.

(Tr.  20)

In making this assessment, the ALJ considered Plaintiff's reported conditions and symptoms, and found Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were only partially consistent with the medical evidence and other evidence in the record. (Tr.  20-21) In support, the ALJ detailed the medical records and medical opinions related to Plaintiff's mental health conditions and found "[a]lthough the evidence of record, such as mental status examination findings, supports some mental limitations, it does not support greater mental limitations than those detailed in the residual functional capacity." (Tr.  23-26)

The ALJ found Ms. Williams' opinion that Plaintiff would miss approximately 4 days of work per month, would be off task more than 25 percent of the day, and had marked or extreme limitations in all areas of mental functioning, was not well supported and inconsistent with the other evidence of record and, thus, unpersuasive. (Tr.  25) Specifically, the ALJ found Ms. Williams' opinion was not well supported because it consisted of "a list of diagnoses and general circled form responses, such as clinical findings, without further narrative explanations[.]" (Tr. 25)  The ALJ also found that Ms. Williams' opinion was inconsistent with the other evidence in the record, including Ms. Williams' and Dr. Huffman's treatment notes documenting that Plaintiff "was cooperative, showing no significant cognitive or memory deficits, indicating during most visits [that Plaintiff] denied deficits in dressing or bathing or difficulties preparing meals or arranging transportation or finances, and indicating [Plaintiff] was able to seek treatment for herself and communicate adequately with them." (Tr.  25-26)

9

The ALJ found Dr. Huffman's opinion to be only marginally persuasive, noting that Dr. Huffman's opinion was less restrictive than Ms. Williams' opinion with respect to Plaintiff's functional limitations. (Tr.  26) The ALJ found that Dr. Huffman did not provide an explanation to support her conclusion that Plaintiff had marked or extreme limitations and that Dr. Huffman's finding were inconsistent with her treatment notes and the record as a whole. (Tr.   26). Specifically, the ALJ found Dr. Huffman's finding that Plaintiff had marked or extreme limitations in her ability to maintain attention and concentration, to sustain an ordinary routine without special supervision, and to get along with co-workers or peers without distracting them or exhibiting extreme behaviors, was inconsistent with Dr. Huffman's treatment notes demonstrating Plaintiff was appropriately groomed with intact eye contract, normal speech, generally congruent mood and affect, and grossly intact attention and memory. (Tr.  26) The ALJ concluded that Dr. Huffman's opinion was also inconsistent with the records as a whole, "such as a lack of significant objective attention or concentration deficits noted in the medical evidence during the relevant period, including records from Dr. Huffman and Ms. Williams…and treatment notes indicating mood or affect abnormalities on examination at times, but not indicating [Plaintiff] was uncooperative." (Tr.  26)

Based on the vocational expert's testimony, the ALJ concluded Plaintiff was unable to perform any past relevant work. (Tr.   27-28) However, based on the RFC, Plaintiff's age, education, and prior work experience, and the vocational expert's testimony, the ALJ found Plaintiff was able to perform other jobs that existed in significant numbers in the national economy,

such as mail room clerk, café attendant, and housekeeping cleaner.[8] (Tr. 28) The ALJ therefore concluded Plaintiff was not disabled. (Tr. 29)

## V.    Discussion

Plaintiff argues the ALJ's determinations that Plaintiff's subjective complaints were inconsistent with the record and that Ms. Williams' medical opinion was unpersuasive were not supported by substantial evidence. [ECF No. 10]  Specifically, Plaintiff argues the ALJ failed to support her conclusion that Plaintiff's subjective reports regarding the effects of her mental health conditions on her ability to concentrate, remember, and understand, were inconsistent with the other evidence in the record by identifying and explaining the alleged inconsistencies. Plaintiff asserts the ALJ only provided a summary of the medical evidence and did not explain how that evidence was or was not consistent with Plaintiff's subjective reports of her limitations.  Plaintiff also contends the ALJ failed to explain her consideration of Plaintiff's activities of daily living.

Plaintiff further contends the ALJ's conclusion that Ms. Williams' medical opinion was unsupported and inconsistent with the other evidence in the record and, thus, unpersuasive, is not supported by substantial evidence. Specifically, Plaintiff argues the ALJ erred in finding that Ms. Williams' opinion was unsupported based solely on the lack of a narrative explanation because the opinion was supported by Ms. Williams' and Dr. Huffman's treatment notes.  Plaintiff contends the ALJ erred by failing to consider the consistency between Ms. Williams' and Dr. Huffman's medical opinions when evaluating the consistency of Ms. Williams' opinion with the other evidence in the record.  Plaintiff further contends the ALJ erred in failing to consider Ms. Williams'

---

[8] Plaintiff does not challenge the vocational expert's testimony regarding the positions available under the ALJ's posed hypotheticals or the ALJ's reliance on this testimony in concluding Plaintiff is not disabled.

treating relationship with Plaintiff and Ms. Williams' specialization in mental health in assessing the persuasiveness of Ms. Williams' opinion.

In response, the Commissioner argues the ALJ properly evaluated Plaintiff's subjective psychiatric complaints in light of the other evidence in the record and appropriately accounted for Plaintiff's functional limitations in the RFC determination.  [ECF No. 11] The Commissioner also contends the ALJ properly evaluated the persuasiveness of Ms. Williams' medical opinion and that the ALJ's finding that Ms. Williams' medical opinion was unsupported and inconsistent with the other evidence in the record is supported by substantial evidence.

A.  Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Chesser v. Berryhill, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." Id. (quoting Prosch, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the ALJ's findings[.]"  Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)).

      B.  Subjective Complaints/Inconsistencies with the Record

      Plaintiff claims that substantial evidence does not support the ALJ's conclusion that Plaintiff's subjective complaints regarding the effects of her mental health conditions on her ability to concentrate, remember, and understand are inconsistent with the record.  [ECF No. 10] Plaintiff argues the ALJ violated Social Security Rule 16-3p by providing only a summary of the medical evidence and failing to identify the evidence the ALJ found inconsistent with Plaintiff's reports and explain why this evidence was inconsistent. [ECF No. 10] Plaintiff also contends the ALJ failed to explain her consideration of Plaintiff's activities of daily living in assessing the consistency of her subjective complaints. [ECF No. 10]

      When determining a claimant's RFC, the ALJ must evaluate the consistency of the claimant's subjective complaints with the evidence of record. Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007); SSR 16-3p, 2017 WL 5180304 (SSA. Oct. 2017).  While an ALJ cannot ignore a claimant's subjective complaint, Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984), it may discount those complaints if "they are inconsistent with the evidence as a whole." Milam v. Colvin, 794 F.3d 978, 984 (8th Cir. 2015).  In discounting a claimant's subjective complaints, an ALJ must consider all of the evidence and make an express determination, detailing her reasons for discounting the claimant's complaints, identifying inconsistencies between the claimant's complaints and the evidence in the record, and discussing the relevant factors set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). Renstrom, 680 F.3d at 1066. The Polaski factors include: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of

medication; (5) the claimant's functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence supporting the claimant's complaints. Id. at 1065–66; see also 20 C.F.R. § 404.1529(c). While an ALJ must consider these factors, she need not discuss how each factor supports her determination. Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007). If an ALJ "explicitly discredits" a claimant's complaints and "gives a good reason for doing so," a court should defer to her determination. Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007).

Social Security Rule 16-3p, effective March 28, 2016, also sets forth factors relevant to the ALJ's evaluation of the intensity, persistence, and limiting effects of a claimant's symptoms and the ALJ's "analysis of whether a claimant's subjective complaints are consistent with the medical evidence." SSR 16-3p, 2017 WL 5180304 (SSA. Oct. 2017); Noerper v. Saul, 964 F.3d 738, 745 (8th Cir. 2020); Lawrence v. Saul, 970 F.3d 989, 995 (8th Cir. 2020). If a claimant makes statements about the intensity, persistence, and limiting effect of her symptoms, SSR 16-3p requires the ALJ to determine whether the statements are consistent with the medical and other evidence of record.  SSR 16-3p, 2017 WL 5180304, at *8; see also 20 C.F.R. § 404.1529(c)(3) (explaining how the SSA evaluates symptoms, including pain). While SSR 16-3p eliminates the use of the term "credibility" in examining a claimant's subjective complaints and clarifies that the Commissioner's review is an examination for the level of consistency between a claimant's subjective assertions and the balance of the record as a whole, SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" under Polaski.[9]  Noerper, 964 F.3d 738, 745 n. 3 (8th Cir. 2020).

---

[9] The SSR 16-3p factors are similar to the Polaski factors and include: (1) the claimant's daily activities; ( 2) the location, duration, frequency, and intensity; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) treatments other than medications; (6) other measures used to relieve symptoms; and (7) any other functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *7-8.

Plaintiff asserts the ALJ failed to support her finding that Plaintiff's subjective complaints of symptoms were "partially consistent with the evidence in the record" by identifying the evidence in the record she believed was inconsistent with Plaintiff's self-reported limitations. Specifically, Plaintiff contends the ALJ failed to identify what evidence in the record was inconsistent with Plaintiff's reports that she: (1) "could not concentrate well and was very forgetful[,]" (2) "tried to read the Bible and could not understand what she read[,]" (3) could pay attention for one to five minutes, (4) suffered from daily panic attacks, and (5) experienced "'bad days' in which she cried and prayed." [ECF No. 10] Plaintiff argues her reported symptoms were consistent with medication adjustments ordered by her providers and Ms. Williams' referral of Plaintiff to Dr. Huffman when Ms. Williams' treatment plan failed. [ECF No. 10]   Plaintiff contends the ALJ also failed to consider the consistency between Plaintiff's reported symptoms and her activities of daily living, which includes: (1) needing reminders to wake up, take her medications, and go to her doctor's appointment, (2) staying home most of the time, (3) being "slower than usual" and needing to double check her work when using a checkbook, (4) limiting her interactions with other people, and (5) failing to understand when reading the Bible.  [ECF No. 10]

The ALJ's finding that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were "inconsistent with the medical evidence of record" and that her reports were only partially consistent with the record, is supported by substantial evidence. (Tr.

---

SSR 16-3p also directs the ALJ to set forth specific reasons for the weight given to the claimant's symptoms and to identify and explain the consistencies and inconsistencies between the claimant's symptoms and the other evidence of record.  2016 WL 1119029, at *8-9. Furthermore, SSR 16-3p requires the ALJ to consider and discuss only those factors that are relevant to the assessment. 2016 WL 1119029, at *7. Compare Renstrom, 680 F.3d at 1066 (in evaluation of claimant's subjective complaints, the ALJ must consider all of the evidence and make an express determination, detailing her reasons for discounting the claimant's complaints, identifying inconsistencies between the claimant's complaints and the evidence in the record, and discussing the relevant factors set forth in Polaski, 739 F.2d 1320).

20-21) In the determination, the ALJ discussed Plaintiff's medical records, specifically her mental status examination findings, at length in support of her conclusion that the records did not support greater mental limitations than those in the RFC. (Tr.  23-25)

The medical records demonstrate that between August 2019 and November 2020, Plaintiff sought mental health treatment with Ms. Williams nine times. Although Plaintiff exhibited concrete thinking and was at times tearful, anxious, or sad, Plaintiff was consistently alert, oriented, calm, and cooperative. (Tr.  440-443, 444-449, 680, 681-682, 837, 840, 859) Ms. Williams' treatment notes reflect that Plaintiff's concentration and attention were present and that her short- and long-term memory were intact. (Tr.  440-443, 680-682, 691-692, 837, 840, 859, 870) Plaintiff denied any deficits in self-feeding, dressing, and bathing or any difficulties arranging transportation or her finances. (Tr. 681- 682, 692, 837, 840) However, after several medication adjustments, Ms. Williams referred Plaintiff to Dr. Lara Huffman in November 2020 "due to failed conservative treatment." (Tr.  872)

In December 2020, Dr. Huffman observed that Plaintiff was appropriately groomed with intact eye contact, normal speech, and generally congruent mood and affect. (Tr.  1100) Plaintiff's attention and memory were intact. (Tr.  1100) At an appointment in March 2021, Plaintiff complained she was "having trouble concentrating on reading her Bible" and difficulty remembering what she just read, but that she experienced difficulty concentrating and focusing "since school." (Tr.  1114) Based on Plaintiff's reports and results from her "ASRS"[10] Dr. Huffman

---

[10] Dr. Huffman's treatment notes do not define "ASRS." (Tr.  1114) However, the ADHD Self-Reported Scale or ASRS-v1.1 "is a widely used screening instrument for ADHD in adults. See National Institute of Health,  National Library of Medicine, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5946096/#:~:text=the%20MDD%20patients.-,The%20ASRS%2Dv1.,total%20classification%20accuracy%20of%2067.5%25.

diagnosed Plaintiff with attention-deficit hyperactively disorder (ADHD) and prescribed Strattera. (Tr. 1114) Thus, the ALJ's finding that Plaintiff subjective reports regarding the limitations to her concentration, memory, and understanding are only partially consistent with the medical evidence is supported by substantial evidence.

Furthermore, Plaintiff's self-reported activities of daily living do not support greater limitations. Although Plaintiff reported difficulty being around other people and staying to herself, she also went shopping once or twice a week. (Tr. 272)  While she reported that she needs reminders, did not finishing what she started, is unable to concentrate for no more than five minutes at a time, and is unable concentrate and understand when reading the Bible, Plaintiff also testified that she was able to watch television for 30 to 60 minutes at a time and that she would read depending on "if [she] can get into it[.]" (Tr. 273)  Furthermore, Plaintiff's testimony that she was a "little slower than usual" and had to double check her calculations when balancing her checkbook does not support greater functional limitations in light of the evidence that Plaintiff had no difficulty managing her finances and was able to use a checkbook, pay bills, handle a savings account, and count change. (Tr. 272)  See McDade, 720 F.3d at 998 (an ALJ may discount a claimant's subjective complaints of disabling impairment if they are inconsistent with her activities of daily living).

To the extent the ALJ did not specifically discuss each Polaski factor, the Court notes that an ALJ is "not required to discuss methodically each Polaski consideration, so long as he acknowledge[s] and examine[s] those considerations before discounting [the claimant's] subjective complaints." McDade, 720 F.3d at 998 (alterations in original) (quoting Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).  Here, the ALJ detailed Plaintiff's subjective complaints, her activities of daily living, and the relevant medical records and concluded that Plaintiff's subjective

17

complaints were only partially consistent with evidence of record. The ALJ included limitations to Plaintiff's mental RFC to account for Plaintiff's symptoms affecting her ability to concentrate, remember, understand, and interact with others. Specifically, the ALJ limited Plaintiff to learning, remembering, and carrying out simple and routine task and to using "reason and judgment to make simple, routine work-related decisions." (Tr. 20) The ALJ also eliminated jobs involving tandem tasks and adversarial actions, and limited Plaintiff to no direct interaction with the public, to infrequent interaction with co-workers, and to occasional interaction with supervisors. (Tr. 20). The Court therefore finds the ALJ properly considered the factors set forth in SSR 16-3p and Polaski and determined that the evidence in the record failed to support greater limitations than those included in the RFC.

      C.  <u>Evaluation of Ms. Williams' Medical Opinion</u>

Plaintiff argues substantial evidence does not support the ALJ's determination that Ms. Williams' medical opinion was unpersuasive because it was unsupported and inconsistent with the evidence of record. Specifically, Plaintiff argues Ms. Williams' opinion is supported by Ms. Williams' and Dr. Huffman's treatment notes and that the ALJ erred in concluding Ms. Williams' opinion was unsupported based solely on her failure to provide a narrative explanation for her opinion. More specifically, Plaintiff contends mental status examination showed Plaintiff had poor attention and concentration, a tearful and anxious mood, irregular speech, increased mood swings and nightmares, and that Plaintiff's medications were not controlling her symptoms. [ECF No. 10] Plaintiff also argues the ALJ failed to consider the consistency between Ms. Williams' and Dr. Huffman's medical opinions when evaluating the persuasiveness of Ms. Williams' opinion, noting that both providers opined that Plaintiff would miss four days of work, be off-task 25% or more of the workday, and had marked limitations in maintaining attention, concentration, and sustaining

18

an ordinary routine without special supervision. [ECF No. 10] Plaintiff further contends that the ALJ erred in evaluating the persuasiveness of Ms. Williams' opinion because Ms. Williams' specialization in mental health treatment and treating relationship with Plaintiff supported a finding that the medical opinion was persuasive. [ECF No. 10]

The Commissioner asserts the ALJ properly evaluated Ms. Williams' medical opinion. [ECF No. 11]. The Commissioner argues substantial evidence supports the ALJ's determination because Ms. Williams' opinion was not supported with a narrative explanation or by Ms. Williams' treatment notes and that it was inconsistent with the findings and treatment notes of Dr. Huffman. [ECF No. 11]

For claims filed on or after March 27, 2017, such as Plaintiff's claim, the ALJ evaluates medical opinions and prior administrative medical findings under 20 C.F.R. §§404.1520c, 416.920c. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c (a), 416.920c (a). Rather, the ALJ will consider all medical opinions according to several enumerated factors: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes the length of treatment relationship, the frequency of examinations, the purpose of the treatment, the extent of treatment, and the examining relationship; (4) the medical source's specialization; and (5) other relevant factors such as the medical source's familiarity with the other evidence and the source's understanding of the SSA's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c (a), (c); 416.920c (a), (c).

The ALJ must articulate in her determination how persuasive she finds all of the medical opinions and prior administrative medical findings in the case record. 20 C.F.R. §§ 404.1520c (b),

416.920c (b). The most important factors are supportability and consistency, and the ALJ must explain in her determination how she considered these factors for each medical source's medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c (a), (b)(2);  416.920c (a), (b)(2).  Dornbach v. Saul, 4:20-CV-36 RLW, 2021 WL 1123573, at *4 (E.D. Mo. Mar. 24, 2021); Bradley v. Kijakazi, 1:22-CV-19-SNLJ, 2022 WL 4482407, at *4 (E.D. Mo. Sept. 27, 2022); Martini v. Kijakazi, 4:20-CV-1711-CDP, 2022 WL 705528, at * 4 (E.D. Mo. Mar. 9, 2022). Generally, the ALJ is not required to explain his consideration of the remaining factors.[11]   20 C.F.R. §§ 404.1520c (b)(2); 416.920c (b)(c); Martini, 2022 WL 705528, at * 4.

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical findings will be." 20 C.F.R. §§ 404.1520c (c)(1); 416.920c (c)(1). Thus, supportability is an assessment of how well a medical source supported and explained his or her opinion. Daniels v. Kijakazi, No. 21 Civ. 712 (GWG), 2022 WL 2919747, at *5, (S.D. N.Y. July 26, 2022). The ALJ may consider whether the physician's own treatment notes support the physician's opinion. Starman v. Kijakazi, No. 2:20-cv-00035-SRC,  2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021).

The regulations provide that "consistency" means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c (c)(2); 416.920c (c)(2). "Thus,

---

[11] The ALJ must articulate his consideration of the remaining factors when two or more medical opinions or prior administrative medical findings about the same issue are not exactly the same and both opinions are equally well supported and consistent with the record. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c (b)(2).

'[c]onsistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them.'" Daniels, 2022 WL 2919747, at *5 (quoting Cuevas v. Comm'r of Soc. Sec., 2021 WL 363682, at *10 (S.D. N.Y. Jan. 29, 2021).

The ALJ concluded Ms. Williams' opinion that Plaintiff would miss approximately 4 days of work per month, would be off task 25% or more of the day, and had marked or extreme limitations in all areas of mental functioning, was neither well supported nor consistent with the other evidence of record. (Tr.  25)  Specifically, the ALJ found Ms. Williams' opinions were not well-supported because it consisted of "a list of diagnoses and general circled form responses, such as clinical findings, without further narrative explanations[.]" The ALJ also found the Ms. Williams' opinions were inconsistent with the other evidence in the record, including Ms. Williams' and Dr. Huffman's treatment notes documenting that Plaintiff "was cooperative, showing no significant cognitive or memory deficits, indicating during most visits [that Plaintiff] denied deficits in dressing or bathing or difficulties preparing meals or arranging transportation or finances, and indicating [Plaintiff] was able to seek treatment for herself and communicate adequately with them." (Tr.  25-26)

In the decision, the ALJ summarized, at length, the medical records related to Plaintiff's mental health treatment which included Ms. Williams' and Dr. Huffman's treatment notes between August 2019 and March 2021. (Tr.  23-26)  As already noted, Ms. Williams' treatment records reflect: (1) Plaintiff was consistently alert, oriented, calm, and cooperative (Tr.  440-443, 444-449, 680, 681-682, 837, 840, 859), (2) Plaintiff's concentration and attention were present and that her short- and long-term memory were intact. (Tr.  440-443, 680-682, 691-692, 837, 840, 859, 870), and (3) Plaintiff did not exhibit deficits in self-feeding, dressing, and bathing or any difficulties

arranging transportation or her finances (Tr. 681- 682, 692, 837, 840). Dr. Huffman's treatment notes demonstrate that Plaintiff's attention and memory were intact despite Plaintiff's complaints of difficulties with concentrating and remembering.  (Tr.  1114) Dr. Huffman further observed that Plaintiff was appropriately groomed with intact eye contact, normal speech, and generally congruent mood and affect. (Tr.  1100)

The ALJ also considered Dr. Huffman's opinion, which the ALJ concluded was only "marginally partially persuasive,"  noting that Dr. Huffman's opinion was less restrictive than Ms. Williams' opinion with respect to some of Plaintiff's functional limitations. (Tr.  26) The ALJ observed that Dr. Huffman did not support her opinion with an explanation and that Dr. Huffman's finding were inconsistent with her treatment notes and the record as a whole. Specifically, the ALJ found Dr. Huffman's finding that Plaintiff had marked or extreme limitations in her ability to maintain attention and concentration, to sustain an ordinary routine without special supervision, and to get along with co-workers or peers without distracting them or exhibiting extreme behaviors was inconsistent with Dr. Huffman's treatment notes demonstrating Plaintiff was appropriately groomed with intact eye contract, normal speech, and generally congruent mood and affect, and grossly intact attention and memory. (Tr.  26). The ALJ concluded that Dr. Huffman's opinion was also inconsistent with the records as a whole, "such as lack of significant objective attention or concentration deficits noted in the medical evidence during the relevant period, including records from Dr. Huffman and Ms. Williams…and treatment notes indicating mood or affect abnormalities on examination at times, but not indicating [Plaintiff] was uncooperative." (Tr.  26)

The Court finds the ALJ properly evaluated the persuasiveness of Ms. Williams' opinion by weighing both the supportability and consistency of the opinion and that the ALJ's determination that Ms. Williams' opinion was not persuasive is supported by substantial evidence.

In concluding that Ms. Williams' opinion was unsupported, the ALJ considered that Ms. Williams relied upon a checklist form and did not provide an explanation for her opinion, and that the opinion was inconsistent with her own treatment notes. (Tr.  23-25)  See Hendricks v. Kijakazi, No. 2:20-CV-00054-NCC, 2022 WL 539093, at *4 (E.D. Mo. Feb. 23, 2022) (in assessing the supportability factor, the ALJ may consider "the physician's own treatment notes do not support the physician's opinion, that the physician's opinion stems from a checklist, that the physician did not consider certain evidence, that the physician did not examine the claimant, or that the physician did or did not provide a detailed explanation for the opinion) (citing Starman, 2021 WL 4459729, at *4.

With respect to consistency, the ALJ found that Ms. Williams' opinion was inconsistent with the other evidence in the record, specifically portions of Dr. Huffman's opinion and the providers' treatment notes. To the extent Ms. Williams' and Dr. Huffman's opinions were consistent on the number of days absent and percentage of time off-task, the ALJ noted that Dr. Huffman also failed to explain her conclusions and that Dr. Huffman's conclusions were inconsistent with her treatment notes. Further, while the medical opinions were consistent with each other in some respects, they were frequently inconsistent as to their findings regarding Plaintiff's functional limitations. The ALJ also found that Ms. Williams' opinion as to Plaintiff's functional limitations were inconsistent with Dr Huffman's and Ms. Williams' treatment notes documenting that Plaintiff "was cooperative, showing no significant cognitive or memory deficits, indicating during most visits [that Plaintiff] denied deficits in dressing or bathing or difficulties preparing meals or arranging transportation or finances, and indicating [Plaintiff] was able to seek treatment for herself and communicate adequately with them." (Tr.  25-26) Based on the record, the Court finds the ALJ properly considered the statutory factors in evaluating the persuasiveness

of Ms. Williams' opinion and that the ALJ's determination that Ms. Williams' opinion was unsupported and inconsistent with the other evidence in the record is supported by substantial evidence.

**VI.    Conclusion**

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports Defendant's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of Defendant denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

_Patricia L Cohen_
_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of September, 2023